UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**DHARMINDER SINGH,**

    *Petitioner*,

**v.**                                  **Case No. 5:26-CV-0125-JKP**

**PAM BONDI, United States
Attorney General, et al.,**

    *Respondents*.

## ORDER GRANTING
## PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is a Petition for Writ of Habeas Corpus (ECF No. 1) filed pursuant to 28 U.S.C. § 2241. Respondents (often referred to as "the Government") have filed a response (ECF No. 5). Petitioner has filed a reply (ECF No. 6). The petition is ready for ruling. After reviewing the briefing, provided evidence, and applicable law, the Court grants the petition for the reasons below.

## I. BACKGROUND

Petitioner a citizen and native of India twice lawfully entered the United States in 2025 on a valid B-1/B-2 visa. After the second entry, on May 29, 2025, he remained in the United States and while lawfully in the United States, he filed for asylum (Case No. MGL2525317641) and completed asylum biometrics and fingerprints. During this time, he resided openly with his sister in Fresno, California. However, after he accidently crossed into Canada in December 2025, Canadian authorities detained him and transferred him to immigration authorities in the United States following their confirmation that he had a pending asylum application.

Petitioner is now detained at the Karnes County Immigration Processing Center. He has no criminal history and there is no indication that he either presents a danger to the community or a flight risk. He asserts that detaining him through merits litigation of his asylum application and

any potential appeals risks prolonged civil confinement that is simply not justified by the limited purposes of immigration detention. He further asserts that failing to provide timely review of erroneous interpretations of the Immigration and Nationality Act ("INA"), including incorrect classifications under 8 U.S.C. § 1225(b), rather than § 1226(a), violates due process.

In a brief, four-page response, Respondents argue that they lawfully detain Petitioner "in removal proceedings as an alien present in the United States having been admitted to the United States, but removable for failing to maintain the nonimmigrant status in which Petitioner was admitted." They provide a Notice to Appear ("NTA") dated December 2, 2025, from Sumas, Washington, which orders Petitioner to appear on January 8, 2026, to show why he should not be removed from the United States on the charges set forth therein. The NTA charges Petitioner as removeable under § 237(a)(1)(C)(i) of the INA, codified at 8 U.S.C. § 1227(a)(1)(C)(i), because after admission as a nonimmigrant under § 101(a)(15) of the INA (codified at 8 U.S.C. § 1101(a)(15)), he failed to maintain or comply with the conditions of the nonimmigrant status under which he was admitted. The NTA further states that Petitioner was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted or to which he was changed under 8 U.S.C. § 1258 or to comply with the conditions of any such status, to wit: he applied for asylum in the United States. Respondents further argue that, because Petitioner is subject to 8 U.S.C. § 1226(a), his detention is discretionary.

Respondents attack the Petition on three fronts. First, they argue that Petitioner has not exhausted his administrative remedies by requesting a custody redetermination hearing and pursuing any denial to the Board of Immigration Appeals ("BIA"). Next, they argue that this Court lacks jurisdiction to review the custody decision because statutory provisions (8 U.S.C. §§ 1226(e), 1252(a)(5), 1252(g)) divest the Court of jurisdiction. And within that jurisdictional section, Respondents briefly assert that Petitioner has stated no colorable claim in this case that supports

finding his detention without bond is unlawful or unconstitutional. They follow that brief assertion with an erroneous assertion that they lawfully detain Petitioner as charged under 8 U.S.C. § 1182(a)(6) as being removeable for unlawfully entering and remaining in the United States without authorization.

## II. JURISDICTION

Jurisdiction is always an initial consideration because it concerns the Court's power over a case. *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Several sections of the INA, codified at 8 U.S.C ch. 12 § 1101 et seq., curtail the jurisdiction of federal district courts in immigration cases. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018).

Respondents invoke 8 U.S.C. §§ 1252(g), 1252(a)(5), and 1226(e) as precluding jurisdiction to review claims about the detention or release of a detainee or related to the validity or execution of an order of removal. The Court has previously rejected each of these provisions as divesting jurisdiction over similar habeas actions. *See*, *e.g.*, *Guzman Tovar v. Noem*, No. 5:25-CV-1509-JKP, 2025 WL 3471416, at *2 (W.D. Tex. Nov. 25, 2025) (addressing §§ 1252(g) and 1226(e)); *Martinez Orellana v. U.S. Dept. of Homeland Sec.*, No. 5:25-CV-1028-JKP, 2025 WL 3471569, at *2–4 (W.D. Tex. Nov. 24, 2025) (addressing §§ 1252(g) and 1252(a)(5)). Respondents' general jurisdictional arguments provide no basis to revisit prior rulings on such matters. For the reasons stated in those cases, the Court concludes Respondents' jurisdictional challenges fail, and the Court has jurisdiction to consider the arguments presented in the instant habeas petition.

## III. ADMINISTRATIVE EXAUSTION

Respondents also invoke exhaustion and thus characterize the Petition as premature. As recognized by the Fifth Circuit, while exhaustion is the general rule, "exceptions to this general rule" exist. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). "A failure to exhaust administrative remedies may be excused when the claimant advances a constitutional challenge unsuitable for determination in an administrative proceeding, or when the unexhausted remedy is plainly inadequate." *Id.* "[W]hen a petitioner's due process claim does not assert a procedural error correctable by the BIA, it is not subject to an exhaustion requirement." *Lopez de Jesus v. Imm. & Naturalization Serv.*, 312 F.3d 155, 162 n.47 (5th Cir. 2002). Federal courts have "the discretion to excuse the exhaustion requirement." *Garner*, 221 F.3d at 825. Here, the "constitutional challenges are not the types of questions" requiring exhaustion, and requiring Petitioner "to exhaust administrative remedies relating to same would be an exercise in futility." *Id.* Exhaustion, furthermore, may also be excused when delay would result in hardship. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

Given Petitioner's asserted constitutional claims and the inherent delays of the immigration process, the Court finds that a lack of exhaustion does not preclude consideration of the instant petition for writ of habeas corpus.

## IV. LEGAL STANDARD

The Supreme Court has referred to the "Great Writ" as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement" and "[r]eceived into our own law in the colonial period." *Fay v. Noia*, 372 U.S. 391, 400 (1963), *overruled in part on other grounds*, *Wainwright v. Sykes*, 433 U.S. 72 (1977), and *abrogated in part on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991). The importance of this Great Writ was not lost on the Justices of the Civil Rights

4

era who recognized that the writ's

> function has been to provide a prompt and efficacious remedy for whatever society
> deems to be intolerable restraints. Its root principle is that in a civilized society,
> government must always be accountable to the judiciary for a man's imprisonment:
> if the imprisonment cannot be shown to conform with the fundamental require-
> ments of law, the individual is entitled to his immediate release. Thus there is noth-
> ing novel in the fact that today habeas corpus in the federal courts provides a mode
> for the redress of denials of due process of law. Vindication of due process is pre-
> cisely its historic office.

Id. at 401–02.

"Only in the rarest of circumstances has Congress seen fit to suspend the writ." *Hamdi v.
Rumsfeld*, 542 U.S. 507, 525 (2004). Moreover, "absent suspension, the writ of habeas corpus
remains available to every individual detained within the United States." *Id.* (citing U.S. Const.,
Art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when
in Cases of Rebellion or Invasion the public Safety may require it")). Indeed, absent suspension,
it is available to "challenge the legality of their detention" by "noncitizens detained by our Gov-
ernment in territory over which another country maintains *de jure* sovereignty," such as Guan-
tanamo Bay. *Boumediene v. Bush*, 553 U.S. 723, 770 (2008). The Great Writ remains "a critical
check on the Executive, ensuring that it does not detain individuals except in accordance with
law." *Hamdi*, 542 U.S. at 525 (citing *Imm. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301
(2001), *superseded by statute on other grounds as stated in Nasrallah v. Barr*, 590 U.S. 573, 580
(2020)).

The fundamental protection of habeas corpus applies to immigration-related detention. *See
Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Indeed, the Supreme Court in *Zadvydas* noted:

> It is well established that certain constitutional protections available to persons in-
> side the United States are unavailable to aliens outside of our geographic borders.
> But once an alien enters the country, the legal circumstance changes, for the Due
> Process Clause applies to all "persons" within the United States, including aliens,
> whether their presence here is lawful, unlawful, temporary, or permanent.

*Id.* at 693 (citations omitted). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Id.*

Habeas petitioners must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. 2025) (quoting 28 U.S.C. § 2241(c)(3)); *accord Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) (recognizing that habeas relief cannot "be had absent [an] allegation" that the petitioner "has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States"). They "bear[] the burden of proving that [they are] being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [this] burden of proof by a preponderance of the evidence." *Villanueva*, 801 F. Supp. 3d at 696 (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). Courts "considering a habeas petition must 'determine the facts and dispose of the matter as law and justice require.'" *Id.* at 697 (quoting 28 U.S.C. § 2243).

## V. ANALYSIS

Petitioner primarily argues that he is entitled to relief in that his detention is unlawful because there has been no individualized showing that he is a danger or a flight risk and detention by its very nature imposes a severe deprivation of liberty while materially impairing his ability to gather corroborating evidence, work with counsel, and fairly litigate his affirmative claim for asylum.

Respondents mostly speak in terms of custody redetermination when arguing a failure to exhaust. But their jurisdictional arguments focus on their position that their detention decisions are not subject to review. And, when they briefly address the merits of the Petition, they boldly assert that there is no colorable claim that Petitioner's detention without bond is unconstitutional. That merits argument indicates a complete failure to conduct an individualized assessment as to

permissible release on bond. And such failure occurred even though Respondents contend that Petitioner is subject to discretionary detention under 8 U.S.C. § 1226(a).

The Court has rejected Respondents' jurisdictional challenges and has found that any lack of exhaustion does not preclude review of asserted claims. Petitioner primarily argues that due process requires adequate procedural protections. Rather than address Petitioner's constitutional arguments, Respondents raise their dual shields of jurisdiction and exhaustion. Once these shields are penetrated or cast aside, Respondents lack any significant weapon to dispose of Petitioner's arguments. They weakly and erroneously assert that they lawfully detain Petitioner as charged under 8 U.S.C. § 1182(a)(6) with removability for unlawfully entering and remaining in the United States without authorization. But that is not the charge against Petitioner. This feeble offensive thrust neither disarms Petitioner's arguments nor strikes any fatal blow.

Respondents concede that they detain Petitioner under the discretionary framework of 8 U.S.C. § 1226(a). When "§ 1226(a) applies to Petitioner's detention, he is owed the process given to him under the statute." *Gonzalez Arreaga v. Minter*, No. 2:25-CV-03167-TLP-CGC, 2026 WL 279882, at *7 (W.D. Tenn. Feb. 3, 2026) (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020)). Once it is accepted or concluded that a petitioner's detention is discretionary under § 1226(a), the next task is to determine whether the detention "violates due process." *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 491–96 (S.D.N.Y. 2025).

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Further, the Supreme Court has long recognized "that the Fifth Amendment entitles aliens to due process of law" in the context of removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing

*Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (sometimes referred to as *The Japanese Immigrant Case*)); *accord Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam).

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (addressing due process claim under the Fourteenth Amendment). "Given the undeniable 'textual parallel between the Fifth and Fourteenth Amendments' courts 'understandably construe[ ] 'due process of law' to mean the same thing under the Fifth and Fourteenth Amendments alike.'" *C.M. v. United States*, 672 F. Supp. 3d 288, 342 (W.D. Tex. 2023) (quoting *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 243 (5th Cir. 2022) (Ho, J., concurring)).

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The flexibility of due process "calls for such procedural protections as the particular situation demands." *Id*. This "does not mean that judges are at large to apply it to any and all relationships." *Id*. Instead, the flexibility of due process lies "in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Id*. Supreme Court cases "underscore the truism that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (cleaned up). Thus, "identification of the specific dictates of due process generally requires consideration of three distinct factors." *See id.* at 335. As succinctly stated in *Mathews*, the three factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

The test articulated in *Mathews* provides the "ordinary mechanism" courts use to balance the "serious competing interests" between asserted governmental needs and the process that an individual contends is due before that individual is deprived of a constitutional right. *Hamdi v. Rumsfeld*, 542 U.S. 507, 528–29 (2004). Courts use the same mechanism "for determining the procedures that are necessary to ensure that [an individual] is not deprived of live, liberty, or property, without due process of law." *Id.* at 529 (cleaned up). The *Mathews* test "dictates that the process due in any given instance is determined by weighing" the individual's affected private interest "against the Government's asserted interest," which includes "the function involved' as well as any burdens resulting from providing greater process. *Id.*

These factors, and the ensuing balancing, apply "when determining the adequacy of process in the context of civil immigration confinement." *Lopez Benitez*, 795 F. Supp. 3d at 492 (citation omitted). When § 1226(a) applies, procedural due process requires an individualized assessment consistent with the framework articulated in *Mathews*. *See id.* at 492–96; *Gonzalez Arreaga*, 2026 WL 279882, at *7.

## A. Private Interest

Petitioner's "interest in being free from physical detention" has been characterized as "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Even conditional release, such as through parole, "is valuable and must be seen as within the protection of [Due Process]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This is so because "the liberty of a parolee, although indeterminate, includes many of the

core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often on others." *Id.* (internal quotation marks omitted).

As already recognized, Petitioner is owed the process given to him through § 1226(a). *Gonzalez Arreaga v. Minter*, No. 2:25-CV-03167-TLP-CGC, 2026 WL 279882, at *7 (W.D. Tenn. Feb. 3, 2026). And part of that process includes a bond hearing before an immigration judge. *See id.* But as cogently and thoroughly analyzed by the Southern District of New York, the § 1226(a) process has two components—one that applies pre-detention and one that applies as a noncitizen continues to be detained. *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 491–96 (S.D.N.Y. 2025).

Before the Government can exercise "discretion to detain a person" under 8 U.S.C. § 1226(a), the statute and implementing regulations "require ICE officials to make an individualized custody determination." *Id.* at 492–93. This flows "from the text of § 1226(a)" and related regulations, 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). *See id.* at 493.

> Reading § 1226(a) as requiring an initial detention decision by DHS is the only way to make sense of the broader statutory and regulatory scheme, which provides for an opportunity to appeal a detention decision to an immigration judge who then conducts their own assessment of the noncitizens' flight risk and dangerousness, among other factors. *See* 8 C.F.R. § 1003.19(d) ("The determination of the Immigration Judge . . . may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service."). If all noncitizens subject to § 1226(a) could simply be detained on a categorical (or arbitrary) basis without any kind of individualized assessment, it would make little sense to permit such individuals an opportunity to challenge their detention by an appeal before an immigration judge on the basis of specific factors such as dangerousness or flight risk.

*Id.*

When the Government has proffered no explanation for detaining the Petitioner under the discretionary provision of § 1226(a), "the facts clearly demonstrate that [Petitioner] was entitled to more process than he received pursuant to § 1226(a) and its implementing regulations." *Id.* at 495 (citation and internal quotation marks omitted). Similarly, as the Government continues to detain a noncitizen under § 1226(a), due process requires "a bond hearing before an immigration

judge." *Gonzalez Arreaga*, 2026 WL 279882, at *7.

**B. The Risk of Erroneous Deprivation**

"The purpose of requiring an exercise of discretion prior to the decision to detain a noncitizen who is not subject to mandatory detention is to prevent an erroneous deprivation of liberty." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025). And while § 1226(a) contemplates an individualized assessment before subjecting a noncitizen to discretionary detention, none has occurred in this case. Nor has any individualized assessment occurred at any bond hearing during Petitioner's continued detention. And there is no indication that Petitioner is either a danger or a flight risk. He was admitted as a visitor who then sought asylum. Nothing of record indicates that his crossing into Canada was anything other than accidental, as described. He appears to be a prime candidate for release on bond or conditional parole as permitted by § 1226(a).

While re-detention is not at issue in this case, the circumstances still warrant finding a high risk of erroneous deprivation. Nothing of record provides any basis to view Petitioner as a flight risk or a danger to the community. Nothing indicates that Petitioner was provided any pre-detention individualized assessment before detaining him under § 1226(a). Petitioner has not received a bond hearing related to his continued detention. It is widely accepted that "bond hearings are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties." *Gonzalez Arreaga*, 2026 WL 279882, at *7.

**C. The Government's Interest**

The Government may validly detain a noncitizen under 8 U.S.C. § 1226(a) when the detention "advances a legitimate governmental purpose." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025). Moreover, there is no question that the Government has interests in "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). But as already mentioned, nothing in the

record indicates that Petitioner is either a flight risk or a danger to the community. He has no criminal history. In these types of circumstances, Respondents have not shown any significant interest in continuing to detain Petitioner. *Lopez Benitez*, 795 F. Supp. 3d at 496.

**D. Balancing Factors**

Considering the "significant liberty at stake, the high risk of erroneous deprivation, and Respondents' failure to show a significant interest in [Petitioner's] detention," the balance of factors overwhelmingly tilts towards finding a due process violation. *See id.* "And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient." *C.W.M. v. Hermosillo*, No. 2:25-CV-02688-DGE, 2026 WL 183587, at *5 (W.D. Wash. Jan. 23, 2026). Further, with respect to the absence of a bond hearing, when the petitioner has a strong liberty interest, coupled with a high risk of erroneous deprivation, "the Government's interest in detaining Petitioner without that procedural safeguard does not outweigh Petitioner's liberty interest or the risk of erroneous deprivation." *Gonzalez Arreaga*, 2026 WL 279882, at *7. Given the conceded applicability of § 1226(a), it is "clear that Petitioner is entitled to a bond hearing before an immigration judge" and that "his continued detention without that bond hearing violates his due process rights." *Id.* And, as analyzed in *Lopez Benitez*, Petitioner's due process rights were violated by the failure to provide any pre-detention individualized assessment.

While the Government has a "countervailing interest . . . in enforcement of the country's immigration laws," *Rojas Vargas v. Bondi*, No. 1:25-CV-01699-DAE, 2025 WL 3251728, at *4 (W.D. Tex. Nov. 5, 2025), such interest is outweighed by the other factors in this case. Further, "the public also has an interest in the government following those laws . . . by providing bond when the law requires it." *Id.* (citations omitted). And as discussed herein, § 1226(a) also requires

an individualized assessment before detaining a noncitizen under that provision.

In an abundance of caution and anticipating a potential change of course by Respondents given legal developments since their response, the Court recognizes that on February 6, 2026, the Fifth Circuit Court of Appeals decided *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), which reversed district court rulings on statutory claims premised on 8 U.S.C. § 1225. But, as reflected in the NTA dated December 2, 2025, Petitioner is not an applicant for admission—he instead has been admitted, yet remains subject to removal for the reasons stated in the NTA. Petitioner was admitted into the United States as a visitor, but he thereafter sought asylum, thereby changing his immigrant status per the NTA. Because detention under § 1225 is not permissible under these facts, the Court has no basis to consider the proprietary of detention other than under § 1226(a) as asserted by Respondents.

Under the facts and circumstances of this case, the Court finds that Petitioner is entitled to habeas relief based upon his Fifth Amendment due process claim, his detention is unlawful, and habeas relief is proper.

## E. Remedy

As fully explained and explored in *Longoria Mendoza v. Noem*, No 5:26-CV-0728-JKP (W.D. Tex. Feb. 26, 2026), the proper remedy is for Respondents to release Petitioner from detention. The Court finds no need to revisit the matter. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus (ECF No. 1). It is **ORDERED** that:

1. **On or before March 8, 2026**, Respondents shall **RELEASE** Petitioner Dharminder

Singh from custody to a public location, under appropriate conditions of release.

2. Respondents must **NOTIFY** Petitioner's counsel of the exact location and exact time of his release as soon as practicable and no less than two hours before his release.

3. Any possible or anticipated removal or transfer of Petitioner under this present detention is **PROHIBITED**.

4. Respondents shall **FILE** a Status report no later than **March 9, 2026**, confirming that Petitioner has been released. If counsel for Petitioner disagrees with any aspect of the filed Status Report, counsel may file a separate Status Report.

A final judgment will be issued separately.

**IT IS SO ORDERED this 6th day of March 2026.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**